JUDGE LINDSAY
delivered the opinion óe the court.
At the August election, 1870, Albert H. Clark and James O. Ellis were rival candidates for the office of judge of the Christian County Court. On the day designated by law for that purpose, W. W. McKenzie, the then county judge, and E. M. Buckner, the county court clerk for said county, organized as an examining board for the purpose of comparing the polls. Upon examination it was found that one of the pages of the poll-book of Hamby’s election precinct was unattached to the remainder of the book, and was not signed by the clerk as required by the statute. The same was rejected by the examiners, and the votes thereon recorded were not counted. It is admitted that upon the page so rejected the names of thirty-four voters were recorded, twenty-nine of whom voted for Clark and five for Ellis. If these votes were properly rejected, it results that Ellis received one thousand nine hundred and forty-five votes and Clark one thousand nine hundred and twenty-three. Upon the other hand, if they were improperly rejected, Ellis received one thousand nine hundred and fifty votes and Clark one thousand nine hundred and fifty-two. In consequence, however, of the rejection by the examiners of said unattached and unsigned page, the certificate of election was given to Ellis.
*527 Clark at once filed his petition in the Christian Circuit Court, and gave notice to the officers composing the examining board that he would apply for a writ of mandamus to compel them to count all the votes polled at Hamby’s precinct, and to issue to him a certificate of his election to the office of county judge for said county.
His petition was dismissed and the mandamus refused; and this action of the circuit court is now before us for revision.
The duties of the examiners are merely mechanical or mathematical. They may possibly judge as to whether or not the returns of the election are in proper form and legally attested; but after that they must compute the votes cast for the several candidates, and issue certificates- of election in accordance with the result. They must give “ written certificates of election over their signatures of those who have received the highest number of votes for any office exclusively within the gift of the voters of the county; one copy of the certificate to be retained in the clerk’s office, another delivered to the persons elected, and the other forwarded to the secretary of state at Frankfort. (Section 2, article 5, chapter 32, Revised Statutes.)
Such duties are purely ministerial, and the officers composing the examining board can be compelled by mandamus to perform them. In case the board refuses to issue the certificate of election to the person receiving the highest number of votes for a county office, and relief by mandamus is withheld, the party aggreived can have no remedy whatever. Possibly he might contest the election of the person to whom the certificate was improperly issued and recover the office. But the person receiving the highest number of votes is entitled to the -certificate of election, and this can not be awarded him by a contesting board. This certificate has an intrinsic value. It is the evidence of the election of the person holding it to the office claimed. As it can not rightfully be withheld from the person *528 receiving the highest number of votes, and as the law provides no other remedy by which it can be obtained, the circuit courts must have the power in all cases in which it is improperly refused to reach the officers composing the delinquent board by writ of mandamus. (Batman v. Megowan, 1 Met. 540.) Nor do we regard it an available objection that the board has already acted in the matter, as in this case. Inferior judicial tribunals can not be controlled in their action by mandamus. They can be compelled to act; but, having discretion in all judicial questions, they must in such be allowed to determine how they shall act. It is not so, however, with ministerial officers. Until they have performed the exact duty imposed upon them by law they must be considered as in default; and in a case like this it would be a legal anomaly to allow the examining board to rely upon the fact that they had issued the certificate of election to a party who had not received the largest number of votes, contrary to an express provision of the law, as a sufficient reason why they should not be compelled to perform an imperative duty. (People ex rel. Fuller v. Hilliard et al., 29 Illinois.)
The chapter of the Revised Statutes regulating elections provides that the judges of the election shall see that the voters’ names are properly recorded in the poll-books, attend to the proper summing up of the votes, certify the poll-books over their signatures, and deliver the same, inclosed in an envelope sealed by them before they separate, to the sheriff. All these duties were strictly complied with by the judges of the election at Hamby’s precinct. The poll-book furnished by the clerk would not contain ' the names of all the persons offering to, vote, in. consequence of which fact the clerk prepared the sheet upon which the thirty-four rejected votes were recorded. Upon this sheet the votes of the four officers of the election were entered. The certificates prepared by the judges in conformity with law included said thirty-four votes, *529 and though this extra but necessary sheet was not attached nor fastened to the original poll-book, yet it was placed inside of the same and sealed up and delivered to the sheriff, and by him delivered to the county court clerk in the exact condition in which he received it; and we are authorized to presume that the clerk discharged his duty, and delivered said poll-book as he received it to the board of examiners. The statute does not require the various leaves or pages upon which the votes are recorded, and which together compose the poll-book, to be fastened the one to the other, nor is the legality or authenticity of the same made to depend upon any such fact. The legal presumption is that all the leaves or sheets contained in the envelope in which the judges of the election in the discharge of their official duty have sealed up the poll-book, and which upon their face purport to constitute part of said book, are genuine and authentic. This presumption is not rebutted by the fact that the clerk of the election failed to sign his name at the foot of the rejected page. The statute requires such signature “at the foot of every page of the poll-book, as the election progresses, so that the same may he identified,” and for no. other or different purpose. Such signature is legal evidence of the identity of the paper, but it does not follow that it is the only evidence that can be received or considered, and that its absence of itself is sufficient to authorize the examiners to reject a page of the poll-book, the authenticity of which is established by other legal and competent evidence to their perfect satisfaction.
The error at most was merely formal, for it appears from the rejected page that the name of the clerk was written thereon in his own hand when his vote was recorded. This, considered in connection with the fact that the poll-book of which this page was evidently a part reached the hands of the examiners in the exact condition in which it left those of the judges,- and that it bears upon its face the impress of authen *530 ticity in every particular except as to the official signature of the clerk at its foot, may be said almost to preclude any idea of fraud or imposition. If the failure of the clerk to comply literally with a statute which is merely directory empowers the board of examiners to disregard all other legal evidence, and reject the votes of thirty-four legally qualified voters, they possess a power dangerous to the citizen, and which may in its possible consequences prove fatal to the elective franchise.
We can not reconcile it to our ideas of right and justice that thirty-four voters shall be disfranchised by the mere neglect of an officer of the election to discharge a merely formal duty. In the language of Judge Breese, in the Illinois case before cited, “ the plain duty of the board was to make the abstract from the returns, and give the certificate to the person who appeared by the returns to have received the highest vote. The question in all such cases should be, whom did the majority of the qualified voters elect? Forms should be made subservient to this inquiry, and should not rule in opposition to substance. A literal compliance with prescribed foi’ms is not required in any case if the spirit of the law has not been violated, and in all cases the intention of the voters clearly ascertained should govern.”
Another ground of defense relied upon by the appellees is that the rejection of these thirty-four votes did not have the effect of changihg the legal result of the election, because of the fact that there were six votes received and counted for Clark at the Garrettsburg precinct, which votes in point of fact were illegal, and so marked upon the margin of the poll-book of said precinct; and that, without said six illegal votes, Clark would still be defeated by a majority of four, even after the thirty-four rejected votes were counted. The evidence conduces to show that these six votes were given by persons who were not qualified voters; but the judges of the election precinct received, counted, and certified said six votes to the *531 board of examiners, and under the law that board had no right to pass upon the legality of the votes received, but was bound to count all votes certified to them by the officers of the election, and issue certificates in accordance with the result. This fact said board recognized and acted upon so far as these six votes were concerned.
The question as to whether or not they were given by qualified voters, can only be raised before a contesting board, and was not pertinent upon the trial of the motion for the mandamus.
It appears that the persons composing the examining board at the time this proceeding was commenced have gone out of office; but according to the decisions of this court, in the cases of Maddox and others v. Graham & Knox, 2 Met. 71; City of Louisville v. Kean, 18 B. Mon.; and Lindsey v. The Auditor, 3 Bush, 233, the mandamus when granted will operate upon such persons as may by law compose the examining board for Christian County at that time.
For the reasons indicated the judgment of the circuit court is reversed, and the cause remanded with instructions to award the mandamus in conformity with the prayer of the appellant. It will be proper in the order to fix the day upon which the examining board shall assemble, in order that Ellis may, if he desires to contest the election of Clark, have an opportunity of giving him the prescribed notice within the ten days after the final action of the board, as fixed by section 5, article 7, chapter 32, Revised Statutes.