Struss v. Johnson.

CASE 47—CONTESTED ELECTION—DEC. 19.

## Struss v. Johnson.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. CONTESTED ELECTION—STATUTORY CONSTRUCTION—EVIDENCE.—
The provision of section 1482 of the Kentucky Statutes with reference to the duties of election officers "that if there are any ballots cast and counted, or left uncounted, concerning the legality and regularity of which there is any doubt or difference of opinion in the minds of the judges of election, said ballots shall not be destroyed, but sealed up and returned to the clerk of the county court, with the returns of the election, for such judicial or other investigation as may be necessary, with a true statement as to whether they have or not been counted, and if counted, what part and for whom," is mandatory and not merely directory; and to render such doubtful or questioned ballots admissible as evidence in a judicial or other investigation, they must be sealed and returned, with the statement of the officers of election as required by the statute.

WALTER EVANS, W. O. HARRIS, FAIRLEIGH & STRAUS, GEORGE
DuRELLE, AND WM. KREIGER FOR APPELLANT.

1. In an election contest the duty of the Board of Contest and of the.
   courts is to ascertain and effectuate the will of the people, and
   one who is legally elected to an office, by receiving a majority of
   legal votes, ought not to be deprived of the office by any omission
   of the election officers or negligence on their part in not preserv-
   ing the votes in the manner prescribed by the statute. (State v.
   Spence, 13 Ala., 813; People v. Holden, 28 Cal., 129; Darragh y.
   Bird, 3 Oregon, 243; 70 Maine, 569; 20 Pick., 484; Ellis v. Glazer,
   61 N. W. Rep., 649; McCreary on Elections, secs. 489, 490, 190,
   195, 247, 192, 194, 201, 463, 445, 468, 440.)

2. The position taken by the canvassing board, that it would not look
   at the ballots, prevented their examination by the contestant, and
   it was not in his power to give a more accurate description of the
   ballots in his notice of contest than was given.

3. Unless a fair consideration of the statute shows that the Legisla-
   ture intended compliance with its provisions to be essential to the
   validity of the proceedings, it is to be regarded as directory
   merely. To hold all such provisions as that in our statute with
   reference to returning doubtful ballots, mandatory and essential
   to the validity of the election, is to sacrifice substance to form,
   and the end to the means. (McCreary on Elections, 3d Ed., secs.
   192, 194, 201, 483, 126; Anderson v. Winfree, 85 Ky., 609; Clark v.
   McKenzie, 7 Bush, 530.)

4. If a statute simply provides that certain things shall be done within
   a particular time, or in a particular manner, and does not declare
   that their performance shall be essential to the validity of the
   election, they will be regarded as mandatory if they affect the
   merits of the election, and as directory only if they do not. (Mc-
   Creary on Elections, sec. 190; Parvin v. Wainberg, 134 Ind., 568;
   Barnes v. Board, 51 Miss., 305; Wheelock's Case, 82 Penn. St., 297;
   Ledbetter v. Hall, 62 Mo., 422; West v. Ross, 53 Mo., 350; Jones v.
   State, 1 Kan., 273; Gilleland v. Schuyler, 9 Kan., 569; People v.
   Cook, 14 Barb., 289; Lindstrom v. Board, 94 Mich., 469; Dorey v.
   Linn, 31 Kan., 759; State v. Judge, 13 Ala., 805.)

5. Parol evidence of the election officers is competent to show whether
   or not the doubtful or contested ballots, which were returned,
   were counted, is competent. (Broaddus v. Mason, 95 Ky., 422;
   McCreary on Elections, secs. 468, 445; Clark v. McKenzie, 7 Bush,
   531; Anderson v. Winfree, 85 Ky., 597; Houston v. Steele, 98 Ky.,
   596.)

6. The ballots in this case are not offered in evidence for the purpose

of overturning the certificate of the election officers.  But even if they were, the inquiry with reference to their custody after the election would be whether there was a reasonable probability of their having been changed, and no such probability has been shown in this case.  (Hudson v. Solomon, 19 Kan., 186; O'Gorman v. Richter, 31 Minn., 30; People v. Holden, 28 Cal., 133.)

KOHN, BAIRD & SPINDLE, AND P. B. and UPTON W. MUIR FOR APPELLEE.

1. The provision of the Kentucky Statutes with reference to returning doubtful or questioned ballots sealed up, accompanied by a statement as to whether they have or not been counted, is mandatory, and such ballots can not be used as evidence in a contested election unless those provisions have been strictly complied with. (Parvin v. Wainberg, 130 Ind., 561; Cooley's Con. Lim., p. 77; Albert v. Twohig, 53 N. W. Rep., 582; Martin v. Miles, 58 N. W. Rep., 723; Powell v. Holman, 6 S. W. Rep., 506; Kingary v. Berry, 94 Ill., 518; McCreary on Elections, 3d Ed., secs. 436, 437, 438, 439, 440, 441, 443; Paine on Elections, secs. 787, 788, 789; People v. Burden, 45 Cal., 241; Hudson v. Solomon, 19 Kan., 177; Coughlin v. Beard, 65 Cal., 584; Bechtel v. Albin, 33 N. E. Rep., 967; In re Marks, 21 Atl. Rep., 962, and 27 Atl. Rep., 608; Curran v. Clayton, 29 Atl. Rep., 930; State v. Randall, 35 Ohio St., 64; West v. Ross, 53 Mo., 351; Houston v. Steele, 98 Ky., 596; Major v. Barker, 99 Ky., 305.)

2. The ballots should not be counted or considered because they were so kept as to make them untrustworthy.  In this case there was not only ample opportunity for them to have been tampered with, but strong evidence that they were tampered with.  Under such circumstances they should not be considered for any purpose. (McCreary on Elections, secs. 436, 439; Anderson v. Winfree, 85 Ky., 610; Cowan v. Prowse, 93 Ky., 165.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT:

The appellant, H. C. Struss, and the appellee, William P. Johnson, were candidates for the office of clerk of the Jefferson County Court at the November election, 1894.   Johnson's majority was 210, as appeared from the returns of the election officers of the various precincts.

Struss instituted this contest, and claims there were enough legal ballots cast for him, which were not counted by the election officers, to elect him. There were several hundred ballots placed loosely or unsealed, and without indorsement on the ballots or otherwise, in the ballot boxes by the election officers. When they completed the count in their respective precincts the ballot boxes were locked and delivered to the clerk of the Jefferson County Court. There were other ballots, properly sealed and endorsed by the election officers, which were also placed in the ballot boxes and returned to the clerk of the county court.

There were not enough of the latter class of ballots returned to overcome the majority which had been returned for Johnson. The contestant introduced an election officer or an inspector at the precincts from which the loose or unsealed and unendorsed ballots were returned to prove they were not counted by the election officers.

The question to be determined is as to whether the ballots should have been counted which were placed unsealed in the ballot boxes, unaccompanied by a true statement by the officers of election as to whether they had or had not been counted; and, if counted, what part, and for whom. A solution of this question depends upon a proper interpretation of the election law.

Section 1482 of the Kentucky Statutes provides: "When the polls are closed the officers of election shall, in the voting room, immediately count the votes and certify the same as hereinafter provided; and no ad-

journment shall be had until the same is completed. When the result of the ballot is ascertained it shall be immediately announced by one of the judges in front of the voting room, and thereupon the judges shall, in the presence of the clerk, sheriff and the inspectors, provided for in the preceding section, destroy the ballots voted, mutilated or spoiled and the ballots remaining unvoted: Provided, That if there are any ballots cast and counted, or left uncounted, concerning the legality or regularity of which there is any doubt or difference of opinion in the minds of the judges of election, said ballots shall not be destroyed, but sealed up and returned to the clerk of the county court, with the returns of the election, for such judicial or other investigation as may be necessary, with a true statement as to whether they have or have not been counted; and, if counted, what part and for whom."

And section 1483 provides: "The form of the return to be made on the inside of the cover of the stub-book shall be substantially as follows: State of Kentucky, ——— county, election held on the ——— day of ——— —, eighteen ———, in ——— precinct. Number of ballots counted as valid, ———; number of ballots questioned or rejected, ———; number of ballots marked 'spoiled,' ———; whole number of ballots cast, ———; number of votes received for governor,— ——— by ———; number of votes received for lieutenant-governor, ——— by ——— (and so for other State and county offices); number of votes on question of — ———, voted yes, ———; voted no, ———.

"We, the judges, sheriff and clerk of election at the precinct above mentioned, certify that the above is a correct return of the election held therein on the day aforesaid.

"_____ _____, Judge,
"_____ _____, Judge,
"_____ _____, Clerk,
"_____ _____, Sheriff."

Until the adoption of the present Constitution there was no law in this State providing for an official and secret ballot. The legislation which followed the adoption of the Constitution prescribed the kind of ballots to be used, and surrounded the elector with such safeguards as the wisdom of the General Assembly could devise to render it impossible for any one to know for whom he had cast his ballot. The purpose was to place him beyond the control or influence of any one, that he might vote without the fear of social or political ostracism or of suffering loss in his business, profession or calling.

The General Assembly also had under consideration the best method of conducting and ascertaining the result of the election. It knew that frauds frequently followed the casting of the ballots, and by that means the result of the election was often changed. The question arose as to what were the best means to be employed to prevent the perpetration of frauds after the ballots had been cast.

By the provisions of section 1482, when the polls close, the officers of election shall, in the voting room,

immediately count the votes, and certify the same as provided in section 1483, and this shall be done before an adjournment takes place.   There must be a public announcement made by one of the judges of the result as ascertained.   When this is done the judges, in the presence of the clerk, sheriff and the inspectors, shall destroy the ballots voted, mutilated or spoiled, and the ballots remaining unvoted.

If there are any ballots cast and counted, or left uncounted, concerning the legality or regularity of which there is any doubt or difference of opinion in the minds of the judges of election, such ballots shall not be destroyed, but be sealed up and returned to the clerk of the county court with the returns of the election, for such judicial or other investigation, as might be necessary, but they should be accompanied with "a true statement as to whether they have or have not been counted; and, if counted, what part and for whom."

The law authorizes political parties to be represented by inspectors at the count made by the officers of election.

As great authority had been vested in the officers of election the law-making power deemed it wise that they should immediately ascertain, certify and publicly declare the result of the election.

The law provides that the ballots which were cast (except those heretofore mentioned) should be destroyed.   The General Assembly did not believe it was wise to preserve them, as had been theretofore done under the law, because they were admissible as

evidence to affect the returns of the officers of election. It did not intend that they should be used as evidence, as it was possible for the ballots to be changed in the box after the election, and thus, in some instances,, overturn the result of the election as certified by the officers. The law requires that the ballots remaining unvoted should be destroyed because it removed the possibility of any one using them for the purpose of stuffing a ballot box or substituting them for those which the law required should be returned sealed, etc., to the county court clerk.

The General Assembly deemed it proper to preserve, for judicial or other investigation, the ballots cast and counted or left uncounted, concerning the legality or regularity of which there was any doubt or difference of opinion in the minds of the judges of election. It knew if these ballots were preserved in the manner in which they had been preserved under the laws of this and other States that a possibility still existed for the fraudulent substitution of ballots, and thus impeach the returns of the officers of election. It, therefore, provided the method for preserving, certifying and returning them, which rendered the successful substitution of ballots therefor almost if not entirely impossible.

If we hold that the ballots which the officers of election placed unsealed in the ballot boxes, and without the statement from the officers of election, which the law requires, as to whether they have or have not been counted, and, if counted, what part and for whom,

then we render possible the evil of the fraudulent substitution of ballots which the General Assembly manifestly attempted to guard against by providing for the destruction of all ballots which were cast or spoiled or unvoted.     It is just as easy to make such fraudulent substitution when the class of ballots in question are returned in the manner in which they were in this case as it would be were all the ballots which were cast preserved and returned.

Without the statement required by the statute there is no official evidence or certificate to show whether the ballots have or have not been counted.

We held in Houston v. Steele, 98 Ky., 596, in effect, when the questioned or doubtful ballots were sealed up and returned as the law provides, the word "returns," as used in the statute, includes the undestroyed ballots.

To hold that that part of the statute requiring the sealing up of the doubtful or questioned ballots, and a statement of the officers of the election as to whether they have been counted, etc., is directory, is to sweep away the safeguard which the law places around the returns of the officers of election.     To hold it is mandatory, in the particular indicated, we follow the manifest purpose of the law-making power, which was to prescribe how doubtful or questioned ballots should be preserved and returned for "such judicial or other investigation as may be necessary."

To render the doubtful or questioned ballots admissible as evidence in a judicial or other investigation,

we are of the opinion that they must be sealed and returned with the statement of the officers of election, as required by the statute.

This view is nowise in conflict with the case of Broaddus v. Mason, 95 Ky., 421. There was no question in that case as to the extent ballots were admissible as evidence but the question was as to the competency of parol evidence to show the officers of the election had made a mistake in adding the votes together after they had been counted. In that case the mistake was shown by the tally sheet and corroborated by the officers of election.

The conclusion which we have reached renders it unneccssary to consider other questions raised by appellant and appellee. It would be unprofitable to review the many authorities cited by counsel because, in our opinion, the policy of admitting ballots as evidence to impeach or change the returns of the officers of election has been reversed by the law-making power, and when it provided for the preservation of a particular class of ballots—a small number compared to the entire number cast—it prescribed a statutory rule to regulate the admission of such ballots as evidence.

Judgment affirmed.

Judge Guffy dissenting, and Judge DuRelle not sitting.

Struss v. Johnson.

JUDGE GUFFY DELIVERED THE FOLLOWING DISSENTING OPINION JAN-
UARY 19, 1897:

It seems to me that the majority opinion of the court in this case is erroneous, and if adhered to will enable election officers to disfranchise many voters, and incidentally deprive persons of office to which they would in law and equity be entitled.

Section 1482 of the Kentucky Statutes, after providing for the counting, certifying, etc., of the result of the election, provides that ballots voted, spoiled, mutilated, and those not voted shall be destroyed; provides that if there are any ballots cast and counted or left uncounted, concerning the legality or regularity of which there is any doubt or difference of opinion in the minds of the judges of election, such ballots shall not be destroyed but be sealed up and returned to the clerk of the county court, with the returns of the election, for such judicial or other investigation as may be necessary, with a true statement as to whether they have or have not been counted, and if counted what part and for whom.

In this case it is clear that a large number of ballots were returned in the ballot boxes, some from one precinct, and some from another, but without the statement required by law as to whether they had been counted or not; in fact without any statement at all. The majority opinion holds that such ballots can not be examined nor proof heard to show that they were not counted.

Manifestly it was the intent of our lawmakers to bet-

ter secure honest and fair elections, by the adoption of the present ballot law, but if the opinion in this case is to be settled law then the voters as well as the candidates are at the mercy of election officers, who, either through ignorance, carelessness or perversity, may neglect to make out the required statement as to ballots that one or more judges doubt.

If, as is claimed in this case, none of these returned ballots had been counted, it is not remarkable that the statement was omitted, because to those not versed in law the statement would seem to be unnecessary, and we are, as I think, bound to take notice of the fact that very many election officers are not at all versed in the law and not able to see and comprehend the meaning and importance of all the statutes regarding elections.    I doubt if there is a full and strict compliance with the election laws in half the precincts of the State at any election.

It seems to me that there can be no law nor tenable construction of law that can or ought to disfranchise a voter who has in a legal manner cast his ballot. When the voter in the manner prescribed by law has cast his ballot he has nothing else to do.    In fact can do nothing else towards seeing that it is counted or certified, and to allow his vote to be rejected or lost by reason of the omission of election officers to comply with the statutes seems to me to strike at the very foundation of our form of government.

Indeed section 1471 of Kentucky Statutes provides that no ballot shall be rejected for any technical error

which does not make it impossible to determine the voter's choice. The section *supra* may be said to directly apply to the officers of election who are to count the ballots at the close of the polls, but it seems to me there can be no good reason why it should not apply in all cases.

As before remarked it is believed that the object of the law-making power in the adoption of our present system of voting was to more effectually protect the voter and prevent fraud of all kinds, and that there was no intention to adopt any new rule as to the right of all voters to have their votes counted if legally cast, and that whenever that fact could be ascertained the vote should be counted, although the officers of election might have omitted to comply with the requirements of the law enacted for the purpose of evidencing how a voter had voted.

I think that the decision in this case is in conflict with the principles announced by this court in many decisions in election cases. In Clark v. McKenzie, 7 Bush, 530, it appeared that a leaf or page of paper not fastened to the poll-book had thirty-four votes recorded on it but the clerk had not signed his name at the bottom of the page as was then required by statute, and the county canvassing board refused to count the votes. Clark brought suit in the circuit court to compel the board to count the thirty-four votes, which suit was dismissed by the court below, and on appeal this court held that the mandamus should issue, and in discussing the question quotes with approval the follow-

ing from the opinion of Judge Breese of the Supreme
Court of Illinois, delivered in an election case: "The
question in all such cases should be, whom did the ma-
jority of the qualified voters elect? Form should be
made subservient to this inquiry, and should not rule
in opposition to substance.

"A literal compliance with prescribed forms is not
required in any case if the spirit of the law has not
been violated, and in all cases the intention of the
voters clearly ascertained should govern."

The foregoing principles have, so far as I am ad-
vised, never been departed from by this court prior to
the rendition of the opinion in this case, and the provi-
sions of section 1471, *supra*, is a statutory endorsement
of the doctrine announced in the case of Clark v. Mc-
Kenzie, *supra*. There is nothing in section 1482 that
prohibits a judicial decision respecting the validity of
returned ballots unless the required statement is also
filed with them. The statutory requirement is but
one of the means by which certain facts are proven, es-
tablished or shown, just as the court said with refer-
ence to the clerk's signature to the bottom of each
page of the poll-book. The required statement adds
nothing to the validity of the ballots, but is only evi-
dence as to whether any of them have been counted,
and if so which and for whom, but if that evidence be
not furnished by the officers it does seem to me
that if such evidence to establish these facts can be
produced that law and justice requires that it shall be
heard and considered.

Suppose that the officers should neglect to make out any certificate showing the number of ballots cast and counted, and returned the books and all the ballots, would it be contended that all the voters at such precincts should be disfranchised and some one given an office, when the ballots showed another person had been in fact elected?   Surely not.

I think in such a case that if it clearly appeared that the ballots so returned were the true legal ballots cast at the election any court would be bound to count them.

In Broaddus v. Mason, 95 Ky., 421, it was held by this court that the certificate of the precinct officers of election as to the number of votes cast for a candidate might be shown to be the result of a mistake, and then so corrected as to give the office to one who, according to the certificate as returned, was defeated, and that decision is evidently right, and it being lawful to show what the real facts were, although to do so contradicted the returns of the officers, it seems to me that where the officers had failed to certify as to a fact required, that proof as to such facts should be heard in order that the truth should be known and the man really elected get the office.   If the official certificate can be contradicted by parol proof to the end that the will of the voter should prevail, surely in the absence of any certificate evidence it should be heard so that the voter should not be disfranchised, and persons inducted into office to which they had not been elected.

The court in the opinion in the last-named case said:

"It may be difficult, on account of ballots being destroyed, in many cases to determine whether officers of the election have miscounted them, and thereby made a false return, yet it is well settled that in order to ascertain the fact, not who was returned elected, but who was in fact elected, parol evidence is admissible." (McCreary on Elections, section 468.)

In McLaughlin v. Wheeler, 18 Ky. L. R., 860, lately decided by this court, the principle announced in the above-named case was adhered to. It appeared in the last-named case that the officers in a certain precinct certified to only nineteen votes for Wheeler, which resulted in McLaughlin obtaining the certificate of election. Upon a contest instituted by Wheeler he was allowed to prove that in fact he received one hundred and nineteen votes, thus contradicting the certificate, and thereby obtaining the office in the court below, and this court affirmed that judgment.

Suppose that the returned ballots in question had been sealed up and a statement signed by all the officers of election that none of them had been counted, would not the court hear proof to show that in fact all of them had been counted? It seems unreasonable to me to hold that the required statement of the officers is the only proof that can be heard as to returned ballots.

The same section which requires the statement aforesaid to accompany the questioned ballots returned requires the officers to immediately count and certify the result, and announce the same without ad-

journment, yet I presume that a failure to do any or all of these without adjournment would not result in the exclusion of the votes so cast. I do not assume that the evidence in this case would have given the office to the appellant, as I do not know what evidence was embraced in the record, because it was held that such evidence could not be read or considered.

I regret to differ from my associates, but the doctrine announced in the majority opinion seems to me to be fraught with so much danger to the voters and candidates that I have felt it my imperative duty to file this, my dissenting opinion, in the case. (Anderson v. Winfree, 85 Ky., 597; Houston v. Steele, 98 Ky., 596.)