CASE 49—PROCEEDING BY W. E. BATES AND OTHERS AGAINST A. G. CRUMBAUGH AND OTHERS, CONTESTING THE ELECTION FOR CITY OFFICES.—DEC. 17.

# Bates and Others v. Crumbaugh and Others. Seven Cases.

APPEAL FROM SCOTT CIRCUIT COURT.

FROM JUDGMENT DISMISSING THE PETITIONS, CONTESTANTS APPEAL. REVERSED EXCEPT AS TO CONTESTANT, CLARK, AND CONTESTEE, KELLY, AND AS TO THEM AFFIRMED.

ELECTIONS—CONTEST—BALLOTS—IRREGULAR MARKS—ELECTION OFFICIALS—DUTIES—RETURNS—FAILURE TO SIGN—CLERK—EVIDENCE.

Held:   1. Election ballots, with stencil marks appearing in the circle under the device of the regular Republican ticket, and also in the circle under the device of the Independent Republican candidate for one of the offices, should not have been rejected on the count.

2. Where the clerk of election fails to sign his name on the back of the ballot, as required by the statute, whether by design or through inadvertence, the ballots should not be rejected merely on account of such failure.

3. A ballot voted in the circle under the Republican device and a cross mark made in the blank under the name of one of the Democratic candidates should be counted for the Republicans except as to such one office, as to which it should be counted for the Democratic candidate.

4. Ballots marked with a blurred figure, or with irregular black marks, in the circle under the device of one party, should be counted for such party.

5. Ballots bearing devices for three sets of candidates, marked in the circles under two of the devices, should be rejected.

6. A ballot marked under the Republican device, but which was torn on the side, should be counted for the Republican candidates, for, having been counted by the officers, the presumption must be indulged that the tearing occurred subsequent to its consideration by them, upon the theory that the officers did their duty, even if the court on appeal were of opinion that such a tear as the one in question vitiated the ballot.

7. The election returns from one precinct were signed only by the clerk of election representing the Democratic party, which was

in the minority. The officers representing the other party appeared the following day, and demanded the right to sign, and the balance of the Democratic officials admitted the correctness of the vote at the time it was taken. The ballots confirmed the accuracy of the count, and gave no evidence of having been tampered with. HELD, that the failure of the officials to sign the return, as required by statute, did not invalidate the vote.

8. A ballot should not be rejected because of ink blots on the back thereof, there being nothing to indicate that they were put there by the voter to distinguish the ballot.

9. On the contest of an election the court will apply the same rules of evidence and draw the same deductions from the facts as would apply and be drawn in an ordinary contest over property rights.

10. Ballots signed by the clerk of election, not with his own name. "George D. Lancaster," but with the words "Hotel Lancaster," will not be rejected for that reason alone.

11. Where ballots were marked unmistakably in the circle under the Republican device with the same kind of a stencil used in marking all the ballots that were counted in the precinct in question and in two other precincts, and the whole appearance of the ballots and the great weight of testimony tend to show that they were voted for the Republican ticket, the fact that there was a shadowy blur, together with marks, in the circle under the Democratic device, apparently fraudulently made by a rubber cross attached to a finger or thumb, will not prevent the ballots from being counted for the Republican candidates.

J. R. MORTON, J. B. FINNELL AND L. F. SINCLAIR, FOR APPELLANTS.

JOHN R. ALLEN AND W. S. KELLY, FOR APPELLEES.

(No briefs.)

OPINION OF THE COURT BY JUDGE DURELLE—REVERSING.

At the election held November 5, 1901, in Georgetown, Scott county, there was a full Democratic ticket upon the ballot, under the emblem of the chicken cock, for all the county and city offices to be filled in that county and city at that election. There was a full Republican ticket for the same offices, except for the office of State senator and county school superintendent, under the device of the log cabin;

and there was an independent candidate for police judge, under his individual device of a picture of Abraham Lincoln. There was also a submission to the voters of a proposal to incur an indebtedness of not exceeding $25,000 for the purpose of building a sewerage system in Georgetown. The Democratic candidates for county offices appear to have won by a comfortable majority, but the vote in the city for city offices and for magistrate of the city district was close. The county board of the election commissioners, after its canvass of the returns, issued certificates of election to A. L. Ferguson as mayor, H. S. Rhoton, as police judge, W. S. Kelley, as city attorney, Z. D. Lusby, as chief of police, D. A. Adams, as city clerk, Geo. C. Wolfe, as city treasurer, J. T. Scott, as city assessor, M. H. Haggard, as magistrate and Jas. Y. Kelley, B. A. Lair, Chas. O'Neil, J. W. Thacker, A. G. Crumbaugh, J. T. Brooks, J. A. Hamon and A. B. Barkley as councilmen, who were the Democratic candidates for the various offices named. The Republican candidates instituted contests for the various offices in the Scott circuit court. The cases were not consolidated, but were heard together, under an agreement that the depositions taken and used in one case should be considered as evidence in all the cases. On the hearing of the cases by the circuit court, judgments were rendered dismissing contestants' petitions.

There were three precincts in the city of Georgetown— the engine house, the city school, and the courthouse precincts. Upon the hearing of the contests the ballots preserved and produced from the city school precinct were rejected entirely on account of failure of the officers to properly certify the returns. It appears from the record that in all three of the precincts there was a failure to certify

the returns in the voting place immediately after the election. In the city school precinct the returns were made out on the inside of the cover of the stub book, and the Democratic clerk affixed his signature. The other officers failed to affix their signatures, as appears from the testimony, purely through oversight; and the two Republican officers appeared before the county clerk, and demanded the right to affix their signatures, on the day after the election, and subsequently appeared before the county board of election commissioners, and demanded the right to sign the certificate. The Democratic judge did not appear before the clerk or before the board of commissioners, but seems to have stated on the outside that he was willing to sign the certificate if it was legal to do so, and in his testimony stated that he was willing to do so if he could be assured that the figures were the same as those made by the officers in the voting place. In the courthouse precinct, which gave a Democratic majority on the face of the returns, no returns were made out in the stub book until after the delivery of the ballot boxes to the county court clerk. The evidence indicates that the county court clerk called the attention of the officers to the omission, and there is some evidence showing that this was done on the suggestion of the clerk of election at the city school precinct. In the engine-house precinct, where the returns showed a majority for the Democratic candidates varying from 23 to 60-odd, the returns were not signed until the day after the election, owing to a dispute as to whether certain ballots not indorsed by the clerk of election with his signature should be counted. The ballot boxes, returns and ballots were all produced before the circuit court upon the hearing of the contest. Taking the count there made as the basis, we find that in the engine-house precinct there were uncontested

ballots counted for the various officers as follows: Democratic Ticket: Ferguson, 183; Rhoton, 179; Kelley, 178; Lusby, 197; Adams, 158; Wolfe, 175; Scott, 170; Haggard, 188; Kelley, 188; Lair, 174; O'Neil, 170; Thacker, 182; Crumbaugh, 173; Brooks, 167; Hamon, 165; Barkley, 171. Republican Ticket: Keller, 115; Bristow, 119; Finnell, 118; Ashurst, 104; Lemon, 135; Bradley, 118; Glass, 122; Johnson, 106; Bates, 120; Bradley, 126; Braden, 117; Clark, 102; Caden, 108; Jenkins, 125; Nunnelly, 126; Offutt, 120. There were three ballots which were not counted by the circuit judge because stencil marks appeared in the circle under the device of the regular Republican ticket and also in the circle under the device of the Independent Republican candidate for police judge. Under the doctrine laid down in the recently decided cases of Herndon v. Farmer, 114, Ky., —, (24 R., 1045) 70 S. W., 632, and little v. Hall 114 Ky., —, (24 R., 1060) 70 S. W., 612, these ballots should have been counted. There appear five ballots which were rejected by the election officers because not signed by the clerk. Both parties to these records have argued in support of the proposition that, where the clerk of election fails to sign his name upon the back of the ballot, as required by the statutes, whether by design or through inadvertence, the ballots should not be rejected merely on account of such failure. The trial court so decided, and, in our opinion, correctly. The principle should be borne in mind that, as to duties required of the voter himself and duties required of election officers, a different rule prevails, and that when officers of election, by neglect or fraud, fail to perform their duty in a matter over which the voter has no control, the inclination of the courts is always that the voter shall not suffer by reason of the negligence of the officers; and, while the provision may be regarded as mandatory with regard

to the officer, and his failure may subject him to punishment, it shall not disfranchise the voter who is not guilty of the violation. McCrary, Elect., sections 225, 283; Payne, Elect., section 528. In Moyer v. Van De Vanter (Wash.), 41 Pac., 60 (29 L. R. A., 670, 50 Am. St. Rep., 900), a statute providing that official ballots lacking the indorsement of an inspector or one of the judges should not be counted was held unconstitutional on the ground that the mere failure of the officer to perform a directory duty should not disfranchise the voter. In Parvin v. Wimberg (Ind. Sup.), 30 N. E. 790 (15 L. R. A., 775, 30 Am. St. Rep., 254), an indorsement by the clerk in the wrong place was held not to vitiate the ballot. See, also, Allen v. Glynn (Colo. Sup.), 29 Pac., 670 (15 L. R. A., 743, 31 Am. St. Rep., 304). And the principle here applied seems to have been the one followed in Clark v. McKenzie, 7 Bush, 523. These five ballots should, therefore, be counted, unless they are open to some other objection. Three of them were marked under the Republican device, and should have been counted for all the Republican candidates, except one, which was scratched in favor of Rhoton. One was voted for Kelley, Bristow, Finnell, Ashurst and Johnson in the squares opposite their names, and for no other candidate. One was not voted in any of the races in contest; and one was voted in the circle under the Republican device, and a cross mark made in the blank under the name of Brooks, a Democratic candidate for the council. Clearly, this last-mentioned ballot should be counted for the Republican candidates, except in that race. There is nothing to show that this mark was intended by the voter as a distinguishing mark, and we are inclined to the belief, from the position of the mark with reference to the small square, that it was intended to be a vote for Brooks. It follows, therefore, that it must be

counted for him.  Six other ballots which had been counted by the officers of election were considered by the trial court, three of which had irregular black marks in the circle under the Democratic device, and were properly counted for the Democratic ticket, under the ruling in Houston v. Steele, 98 Ky., 610, 17 R., 1149, 34 S. W., 6.  One marked under both devices was properly rejected.  One marked with a blurred figure under the Republican device should be counted for the Republican ticket, and one which was marked under the Republican device, but which was torn on the side, should be counted for the Republican candidates; for, having been counted by the officers, the presumption must be indulged that the tearing occurred subsequent to its consideration by them, upon the theory that the officers did their duty, even if we were of opinion that such a tear as the one in question vitiated the ballot.

Making these changes, we have the following result for the engine-house precinct:  Democratic Ticket: Ferguson, 186; Rhoton, 183; Kelley, 181; Lusby, 200; Adams, 161; Wolfe, 178; Scott, 173; Haggard, 191; Kelley, 191; Lair, 177; O'Neil, 173; Thacker, 185; Crumbaugh, 176; Brooks, 171; Hamon, 168; Barkley, 174.  Republican Ticket: Keller, 125; Bristow, 125; Finnell, 128; Ashurst, 114; Lemon, 144, Bradley, 127; Glass, 131; Johnson, 116; Bates, 129; Bradley, 135; Braden, 126; Clark, 111; Caden, 117; Jenkins, 133; Nunnelly, 135; Offutt, 129.

In the city school precinct the proceedings seem to have been conducted with perfect accord between the officers, and with exemplary care in the ascertainment of the result, and in complying with all the requirements of the statute, except in the one matter of signing the returns, which were, as stated, signed only by the clerk of the election.  It is unnecessary to consider whether it was the duty of the

county court clerk to permit the election officers, who had forgotten to sign the returns from this precinct, to sign them after they had been placed in his custody, as he did in the courthouse precinct. It is sufficient to say that there seems to be no substantial attack upon the accuracy of the count, of the correctness of the returns, which were made and signed by the Democratic clerk, and which are further verified by the tally sheets which were returned with the ballots, and substantially agree with the tally made by the circuit judge. A third of the city of Georgetown is not to be disfranchised by an inadvertent omission on the part of the election officers. There is some conflict of opinion upon this question. In some cases it has been held that the requirement of signatures to the certificate of the count is mandatory, and that a return not thus authenticated can not be received by the officers or in a contest. In Butler v. Lehman, 1 Bart. Elect. Cas., 353, such returns were not rejected. The New York assembly held the requirement to be directory merely. N. Y. Elect. Cas., 180. And In Nevada (Stinson v. Sweeney, 17 Nev., 309 (30 Pac., 997), it was held that, where there was no question of the correctness of the return, or the qualifications of the officers or voters, the vote would not be rejected for the lack of a certificate. In People v. Nordheim, 99 Ill., 553, the court said that "the offer by the officers to sign the returns after it was discovered that they had omitted to sign them, and after the returns had been sent in to the proper authorities, was sufficient to treat the returns as if they were in fact signed, and they should have been so treated." And see McCrary, Elect., sections 190, 192. In Moyer v. Van De Vanter, 41 Pac., 61 (29 L. R. A., 672, 50 Am. St. Rep., 900), the supreme court of Washington said: "There is good ground for recognizing a distinction between the obligations placed upon

the individual voter and those matters which relate to the duties of election officers. Great care should be taken to distinguish between those requirements designed to prevent fraud, and which are necessary to the purity of elections, and those which, while designed for the same purpose, are not essential thereto, or we may overreach the salutary effect sought to be obtained from provisions of the character first mentioned by going so far, in construing as valid and mandatory provisions of the second class, as to open the very door to fraud that was sought to be closed thereby. The individual voter may well be called upon to see that the requirements of the law applying to himself are complied with before casting his ballot; and, if he should willfully or carelessly violate the same, there would be no hardship or injustice in depriving him of his vote; but if, on the other hand, he should, in good faith, comply with the law upon his part, it would be a great hardship were he deprived of his ballot through some fault or mistake of an election officer in failing to comply with a provision of the law over which the voter had not control. It is also a question in which the public has a direct and important interest, for the loss of such vote may have a controlling effect upon a public matter." This principle was distinctly recognized in Clark v. McKenzie, 7 Bush, 526. We conclude, therefore, in this case, that, as there is no question of the correctness of the returns which were signed by a clerk representing that party against which the majority appeared, and as the officers representing the other party demanded the right to sign them—the other representative of the minority party at that precinct admitting their correctness at the time they were made—and as the ballots themselves, upon examination, confirm the accuracy of the count by the officers, and there is no suggestion that they

have been tampered with, this precinct should not be thrown out.

The tally made by the circuit judge shows the vote at this precinct to have been: Democratic Ticket: Ferguson, 105; Rhoton, 110; Kelley, 100; Lusby, 104; Adams, 93; Wolfe, 99; Scott, 98; Haggard, 102; Kelley, 109; Lair, 101; O'Neil, 101; Thacker, 107; Crumbaugh, 104; Brooks, 99; Hamon, 96; Barkley, 104. Republican Ticket: Keller, 199; Bristow, 192; Finnell, 202; Ashurst, 202; Lemon, 209; Bradley, 206; Glass, 205; Johnson, 199; Bates, 205; Bradley, 208; Braden, 193; Clark, 193; Caden, 197; Jenkins, 199; Nunnelly, 203; Offutt, 204.

At the courthouse precinct there was some trouble in the count of the ballots. The returns showed 49 ballots questioned or rejected. The evidence shows quite conclusively that 17 of these were rejected by the officers as mutilated ballots, the contention of contestants being that this was fraudulently done by the clerk of election during the count. The evidence shows that 23 of the ballots were not signed on the back by the clerk of election, and that 8 of the rejected ballots were signed by him, not with his own name, "Geo. D. Lancaster," but by the words "Hotel Lancaster." Contestants claim that 48 of the 49 ballots questioned or rejected should be counted for them. There is little doubt of the accuracy of the count of the ballots at this precinct, so far as they were counted. There seems to be no question on either side as to the proper preservation of the ballots which were counted. They were found intact when the ballot box was produced on the hearing of the contest. The tally made by the circuit judge accords with that of the officers, except that he rejected one ballot, apparently because of two ink blots on the back. This ballot, we think, should have been counted for the straight Republican ticket,

Bates and Others v. Crumbaugh and Others.

as there is nothing to show that these marks were put there by the voter for the purpose of distinguishing his ballot. Taking the circuit judge's tally, we have the vote at this precinct as follows: Democratic Ticket: Ferguson, 147; Rhoton, 146; Kelley, 146; Lusby, 153; Adams, 131; Wolfe, 146; Scott, 143; Haggard, 149; Kelley, 155; Lair, 145; O'Neil, 146; Thacker, 149, Craumbaugh, 152; Brooks, 145; Hamon, 144; Barkley, 151. Republican Ticket: Keller, 109; Bristow, 112; Finnell, 114; Ashurst, 111; Lemon, 128; Bradley, 117; Glass, 111; Johnson, 107; Bates, 108; Bradley, 112; Braden, 110; Clark, 99; Caden, 102; Jenkins, 111; Nunnelly, 111; Offutt, 105. Adding these returns, together with the one ballot improperly rejected by the court, to the votes ascertained in the other two precincts, we have the following result, without in any way considering the 48 rejected ballots which contestants claim should have been counted for them: Democratic Ticket: Ferguson, 438; Rhoton, 439; Kelley, 427; Lusby, 457; Adams, 385; Wolfe, 423; Scott, 414; Haggard, 442; Kelley, 455; Lair, 424; O'Neil, 420; Thacker, 441; Crumbaugh, 432; Brooks, 415; Hamon, 408; Barkley, 429. Republican Ticket: Keller, 434; Bristow, 430; Finnell, 445; Ashurst, 428; Lemon, 482; Bradley, 451; Glass, 448; Johnson, 423; Bates, 443; Bradley, 456; Braden, 430; Clark, 404; Caden, 417; Jenkins, 444; Nunnelly, 450; Offutt, 439. This would give the election to the contestants Finnell, Lemon, Bradley, Glass, and to five of the Republican candidates for the council.

The difficulty arises when we come to consider the votes which were not counted by the officers. Upon the hearing there were found in the box only 19 of the 23 unsigned ballots, 16 of the so-called "mutilated ballots," and 6 of the "Hotel Lancaster" ballots. The evidence goes strongly to show that the unsigned ballots and the "Hotel Lancaster"

ballots are not in the same condition that they were when returned by the officers. Although at the count by the officers at the voting place the 8 "Hotel Lancaster" ballots were counted and tallied as straight Republican ballots, 4 of the 6 ballots which were produced on the hearing are marked in the squares to the right of the names of all of the contestees and in the circle under the Republican device, the other 2 of the 6, which we have before us, being marked only in the circle under the Republican device. As to the 23 unsigned ballots, which were not counted by the officers, there is some conflict of testimony. Some of the persons who were officers and inspectors insist that they were not examined. The others insist that they were examined by all of those present at the count, or at least, that they examined them, and they were all practically straight Republican ballots that there were no straight Democratic ballots, and that upon only a few of them was any scratching done in favor of any Democratic candidate. An examination shows that the unsigned ballots numbered 1, 2, 3, 7, 11, 12, 14, 15 and 19—9 ballots—are marked in the circle under the Republican device and in the square at the right of the names of all the contestants, and in no other place. Ballot No. 6 is marked in the same way, except that it has, in addition, a slight blur, apparently made with an inky finger, in the circle under the Democratic device. Ballot No. 4, while it bears no signature of the election clerk, should be properly classed and considered with the socalled "mutilated ballots." Seven of these unsigned ballots—Nos. 5, 9, 10, 13, 16, 17, and 18—show that some mark has been erased from the circle under the Republican device, and have a cross-mark in the circle under the Democratic device. In 4 of them, notwithstanding the erasure, the outline of the cross-mark in the erasure in the circle

under the Republican device can still be seen in a strong light. The remaining ballot is marked in the circle under the chicken cock, and, besides some marks in the squares to the right of the two Democratic candidates for county offices, is marked for both Ferguson and Keller, for both Kelley and Bates, for both Thacker and Clark, for both Crumbaugh and Caden, and also for Ashurst and Lemon on the Republican side, and Barkley on the Democratic side. One of the so-called "mutilated ballots"—including the one unsigned by the clerk (being No. 6)—is imperfectly marked with the stencil in the circle under the Republican device, and is marked with a pen with a cross (X) in the circle under the Democratic device. The remaining 16 are all marked unmistakably in the circle under the Republican device, with a stenciled cross (X) having all the appearances of being made by the same stencil, or the same kind of stencil, used in marking all the counted ballots in this and both the other precincts. Nine of them also have a mark in the circle under the Democratic device, just as unmistakably not made by that stencil or by that kind of a stencil. This mark is of a different size and shape, the arms of the cross are of a different thickness, the ink seems to be of a slightly different color, and about each of these marks under the Democratic device is a small white space, and around that a shadowy blur, evidently made by an inky thumb or finger, and plainly showing the lines of the skin. The other 7 of these ballots have, in addition to the cross (X) under the Republican device, a blurred mark in the circle under the Democratic device, not made by a stencil, but apparently made by an inky thumb or finger. Nothing seems to have been done to these so-called mutilated ballots since the count. They are in substantially the same condition that the evidence indicates they were in at the time the count

was made. The whole appearance of the ballots themselves
and the great weight of the testimony tend to show that
they were voted for the straight Republican ticket by the
voters who cast them, and that they were fraudulently
marked by a rubber cross (X) attached to a finger or thumb.
We do not decide that the clerk of election did this. We
know that some one did it. We can not think it was done
by the voters. Whoever did it, it must have been done
for the purpose of defrauding the Republican candidates
of votes which had been rightfully cast for them, and we
think the attempted fraud should not be permitted to have
effect. Therefore these votes should be counted for the
contestants. The evidence is almost equally conclusive
that the contestants were improperly deprived of eight
votes signed by the clerk "Hotel Lancaster," and that
fraud was perpetrated subsequent to the count by the ab-
straction of two of those ballots from the box, and by the
marking of four of them in the squares to the right of con-
testees' names. This conclusion is strongly supported by
the condition of the other ballots which were returned as
not counted because not signed by the clerk, and which,
despite the evidence of all the officers who claim to have
examined them at the count that they were straight, or
practically straight, Republican ballots, appear as scratched
in favor of contestees, and of no one else. The condition of
the ballot box (either key of which will open both locks)
and the condition of the linen envelope in which the un-
counted ballots were returned (and which, while at one end
it was sealed with hot wax and an impression of the coun-
ty seal, is palpably easy of entrance at the other end) show
that access could have been obtained to these ballots; and
the condition of the ballots themselves points strongly to
the conclusion that access was actually had. The change is

manifest of seven of these ballots from Republican ballots
to Democratic ballots.  The remaining ballots ,which now
appear stamped not only in the circle under the Republican
device, but in the square to the right of each contestees'
name, and nowhere else, are exceedingly suspicious, and are
not passed upon, and are not counted for any one.  An ex-
amination of the ballots themselves shows a very suspicious
state of facts, even if there were no other evidence of
tampering with the ballots which were returned in the
accessible envelope, and if there were no evidence as to
how the ballots appeared at the time of the count.  The 8
"Hotel Lancaster" ballots were undoubtedly all straight
Republican ballots; but as four of them now appear, and
as ten of the unsigned ballots now appear, they present a
most remarkable variety of scratching.  Why a voter should
desire to vote the straight Republican ticket in the county,
where the Republican ticket had no chance, and should also
desire to defeat the candidates of what appears to have
been his party in the city, where they had a chance to win,
is, to begin with, exceedingly peculiar.  And it further ap-
pears that the voters who had this peculiar desire stamped
in the circle of the device with very varying degrees of pres-
sure and of steadiness of hand, and varied also in the
amount of ink taken up on the stencil; but when they came
to scratch in favor of the Democratic city candidates every
one of them showed a singularly uniform pressure, preci-
sion, and care in the amount of ink taken up upon the
stencil.

Inasmuch as it would not change the result to count for
contestants the unsigned ballots which we find marked in
the circle under the Republican device and also in the
squares to the right of contestees' names, and as we can
not, under the circumstances shown in this case, count them

for contestees, they are not counted at all. Counting for contestants the 16 so-called "mutilated ballots," the 8 "Hotel Lancaster" ballots, and the 7 ballots showing an erasure in the circle under the Republican device and the stencil in the circle under the Democratic device, the contestants appear to have been elected, with the exception of contestant Clark, and contestee Kelley appears to have been elected to the council. The vote for the entire city will then stand as follows: Democratic Ticket: Ferguson, 438; Rhoton, 439; Kelley, 427; Lusby, 457; Adams, 385; Wolfe, 423; Scott, 414; Haggard, 442; Kelley, 455; Lair, 424; O'Neil, 420; Thacker, 441; Crumbaugh, 432; Brooks, 415; Hamon, 408; Barkley, 429. Republican Ticket: Keller, 465; Bristow, 461; Finnell, 476; Ashurst, 459; Lemon, 513; Bradley, 482; Glass, 479; Johnson, 454; Bates, 474; Bradley, 487; Braden, 461; Clark, 435; Caden, 448; Jenkins, 475; Nunnelly, 481; Offutt, 470.

Applying the same rules of evidence, drawing the same deductions from the facts before us, which we would apply and draw in an ordinary case of contest over property rights, as was done in Tunks v. Vincent (106 Ky., 829) (24 R., 475) 51 S. W., 622, we are satisfied that we can ascertain the result of these elections as held, counting these contested ballots in the manner indicated, we have no doubt that we thereby establish the will of the voters of Georgetown.

At the hearing a motion was made to dismiss some of the appeals for want of bond. A bond seems to have been given in each case, and no ground for the motion is pointed out by brief or otherwise. The motion is therefore overruled.

For the reasons given, the judgment in each of the cases are reversed, and causes remanded, with directions to enter

judgments for the appellants, except as to contestant Clark and contestee Kelley, as to whom the judgment is affirmed.

Judge Hobson did not sit in the cases of Finnell v. Kelley, and Bates.