THE PEOPLE *ex rel.* Michael W. Ryan

*v.*

JETLEE B. NORDHEIM *et al.*

*Filed at Mt. Vernon June 21, 1881.*

1. ELECTIONS—*in towns to be authenticated as in general elections.* Returns of town elections under the township system, should be authenticated by the judges and clerks of the election, substantially in the manner indicated by the form given in section 61 of the general Election law.

2. The words, "written statement or certificate of the number of votes cast," etc., in sec. 7, art. 7, of the Township Organization act, which "written statement or certificate" the judges of election are required to make, will not justify a statement indorsed without the signatures of the judges. The words, "statement and certificate," are there used as equivalent terms, and the word "or" in the sense of "to-wit," or "that is to say."

3. SAME—*canvassing board must pass on returns.* The canvassing board of an election must, in every case, determine for itself whether the papers transmitted to it are, within the meaning of the law, returns of an election. The canvassers must be satisfied that they are genuine, and purport on their face to give the result of the election, before they will be warranted in recognizing them as returns. The direction as to the mode of authenticating the returns must be regarded as mandatory.

4. SAME—*authentication of returns.* Where the only defect in the returns of an election to the canvassing board was, that the statements or certificates showing the number of votes cast for the various persons voted for were not

authenticated by the signatures of the judges and clerks of the election, it was *held*, that the canvassers had no right to act upon such returns without amendment thereto.

5.  SAME—*amending returns.*  Where the returns of an election are in due form of law, except that the judges and clerks of election have, through mere inadvertence, neglected to sign their names to the statements or certificates of the result, it was *held*, as the returns were no returns in law, the judges and clerks might properly amend the same before the canvassers had completed their canvass, by adding their signatures to the returns, and having offered to do so, which the canvassers refused to allow, it was, on a petition for *mandamus* to compel the canvassing board to correct such returns, treated as if the correction had been made, and the board ordered to correct such returns.

This was a petition for a *mandamus*, filed in this court by the relator.

Mr. RICHARD PRENDERGAST, for the relator:

There is no mandatory provision even in the general Election law requiring the judges to sign the returns, in the sense that a failure to sign them will be fatal to the returns. Sec. 61, chap. 46, Rev. Stat.

But this was not a general election, but a town election, governed, as to the question in issue, by sec. 67 of chap. 139.

But should it be considered that the signatures of the judges should have been at the last page of these poll-books, the case of *The People* v. *Hilliard*, 29 Ill. 413, is an authority for the position that such signatures should have been allowed. Omission of signatures to election papers or returns does not render them void as such. *Howard* v. *Shields,* 16 Ohio St. 184; *State* v. *Ferguson*, 31 N. J. Law, 107; *State* v. *Bentley*, 3 Zab. (N. J.) 532.

When canvassing boards incompletely discharge their duties and adjourn, *mandamus* lies to compel them to reassemble and perform their duties. Moses on Mandamus, 90; *State* v. *Gibbs*, 7 Am. Rep. 233; *Clark* v. *McKenzie*, 7 Bush, (Ky.) 523; *State* v. *Dinsmore*, 5 Brown, (Neb.) 145; *State* v. *County Judge*, 7 Iowa, 186; *Ellis* v. *Commissioners*, 2 Gray,

(Mass.) 370; *In re Strong*, 20 Pick. 484; *Kisler* v. *Cameron*, 39 Ind. 488; *People* v. *Hilliard*, 29 Ill. 413; *Commissioners* v. *Emminger*, 74 Pa. St. 479; *O'Ferrall* v. *Colby*, 2 Minn. 180.

That the certificate has or may have issued to another person, is no objection or obstacle to relief sought herein. *The People* v. *Rives*, 27 Ill. 246; *People* v. *Hilliard*, 29 id. 413; *People* v. *Kilduff*, 15 id. 492; *In re Strong*, 20 Pick. 490; *People* v. *Matteson*, 17 Ill. 167; *Clark* v. *McKenzie*, 7 Bush, (Ky.), 523.

The judges should have been allowed to sign the poll-books. *People* v. *Hilliard*, 29 Ill. 413.

The right to this certificate and office is derived from the election, and not from the returns or canvass. *People* v. *Kilduff*, 15 Ill. 492; *State* v. *Loomis*, 5 Ohio St. 365; *Dishon* v. *Smith*, 10 Iowa, 219; 4 Coke's Inst. 49; *People* v. *Hilliard*, 29 Ill. 413.

If returns show whole number of votes, names of persons voted for, and the office, and number of votes given to each person, they are substantially correct, and should be canvassed. *Taylor* v. *Taylor*, 10 Minn. 107; *People* v. *Hilliard*, 29 Ill. 413; *In re Strong*, 20 Pick. 491.

"If it appears to the House of Representatives that there was an election of Representatives in fact, they should admit them to their seats, though no return thereof was made to the Secretary of State. The representative is not to be deprived of his rights because municipal officers have neglected their duties." Opinion of Justices, 70 Maine, 560.

Statutory provisions, such as the one in question, are directory, and a literal compliance is not essential to the validity of acts performed thereunder. Sedgwick on Stat. and Const. Law, 368, *et seq.*

As to the right of the court to grant general relief, see 1 Chitty's Gen. Prac. 798, 799.

Mr. JAMES P. ROOT, for the respondents:

The canvassing board had no authority to treat anything as a return which was not signed. The exact form of the return is given. Hurd's Stat. 1877, p. 450, secs. 61, 62; Sec. 68 of the Township Organization law.

The canvassers may, probably, judge whether the returns are in due form, but after that they can only compute the votes cast and declare the result. *People* v. *Hurd*, 25 Ill. 328.

They are ministerial officers, possessing no discretionary or judicial powers. *Dishon* v. *Smith*, 10 Iowa, 212; *State* v. *Cavers*, 22 id. 343; McCreary's Law of Elections, sec. 82.

May the judges of election come in afterwards and make the certificate which the law requires? I insist they can not. A canvassing board, having once acted and adjourned, can not reconvene for any purpose. McCreary's Law of Elections, secs. 556, 557, 561, *et seq.*; *Bowen* v. *Hixon*, 45 Mo. 340; *People* v. *Supervisors of Greene*, 12 Barb. 217; *Hartt* v. *Harvey*, 32 id. 35; *Hadley* v. *Mayor*, 33 N. Y. 603; *State ex rel.* v. *Donneworth*, 21 Ohio St. 220; *Clark* v. *Buchanan*, 2 Minn. 347; *People* v. *Sackett*, 14 Mich. 330; Cooley's Const. Lim. *623.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an action of *mandamus*, commenced in this court on the relation of Michael W. Ryan, against Jetlee B. Nordheim, Pleasant Ameck and Peter Schillo, respectively supervisor, assessor and collector of the town of West Chicago, in the city of Chicago, and county of Cook, as a board of canvassers of the returns of the late election, held in said town on the 5th day of April, 1881, for the election of town officers for said town, to compel them to complete the canvass of the returns of said election, and to permit the judges and clerks of said election, in certain election precincts in said town, to properly verify the returns of said precincts, by signing their names thereto,

which, by mistake or inadvertence, they had omitted to do before transmitting them to the town clerk, and to include in their estimate the returns of said precincts when so verified, and to declare the result accordingly; and also to compel said board, upon the completion of such canvass, to make out and deliver to the relator a proper certificate of his election to the office of collector of said town to which he claims to have been elected, as shown by the votes cast at said election. The case comes before us on demurrer to the petition, hence there is no controversy with respect to the facts upon which the rights of the parties depend.

It is admitted by the record that the relator was elected to the office of collector of said town at said election over Hiram P. Thompson, his competitor for said office, by a majority of 325 votes, but that by excluding the returns of four of the precincts of said town, which gave the relator a majority of 426 votes, as was done by the respondents, Thompson had an apparent majority over the relator of 101 votes, and upon this partial canvass or estimate of the returns, the respondents awarded Thompson the certificate of election.

The objection, and only objection, urged against the sufficiency of the excluded returns is, that the statements or certificates indorsed upon the poll-books, showing the number of votes cast for the various persons voted for at said election, etc., were not authenticated by the signatures of the judges and clerks of the election. The returns from these precincts are, in every other respect, in strict conformity with the law.

It further appears, from the petition, that after the returns of said election, including those from the excluded precincts, had come to the hands of respondents, and before any canvass or partial canvass of the same had been made, and before any certificate of election had been awarded to the said Thompson, the several sets of the judges and clerks of the election in the excluded precincts, at the instance of respondents, personally

appeared before the respondents, when duly convened as such board of canvassers, and formally offered to properly authenticate the returns in question by affixing their respective signatures thereto, which offer was then and there refused, and the proposed amendments of said returns disallowed by the respondents.

Under this admitted state of facts two questions are presented for our determination:

*First*— Were the excluded returns sufficiently authenticated, without the signatures of the judges and clerks, to warrant the respondents in recognizing them as election returns, and in estimating them with the other returns of said election?

*Second*—Assuming the returns from the excluded precincts were insufficient without being signed by the judges and clerks of the election in such precincts, ought the respondents to have permitted them to be amended at the time and in the manner proposed, and then to have counted them with the other returns?

These questions will be considered in the order stated.

The 7th section of article 7 of chapter 139 of the Revised Statutes, relating to elections in townships under township organization, among other things provides: "That in towns which lie wholly within the limits of an incorporated city (as was the case here), the common council of such city shall divide each of such towns into election precincts, and designate the voting places in each precinct, and any elector in such town shall be entitled to vote for town officers only in the precinct in which he may reside. The common council of such city shall also appoint three judges of election for each of such precincts, who may be the same persons as are appointed as judges for an election of city officers, held on the same day. * * * The ballots cast at such election for town officers shall be deposited in a separate ballot-box, and shall be counted and canvassed by the judges of election separately from any other ballots that may be cast at any

other election that may be held on the same day.    Said judges of election shall cause to be kept a separate poll-list, which shall contain the names of all persons voting at such election for town officers, together with their residence; and immediately upon closing the polls, they shall canvass the votes polled *in the manner provided by the general election law of the State, and make a written statement or certificate* of the number of votes cast at such election for each person voted for, and the office for which such person received such votes, and shall, within forty-eight hours thereafter, cause such certificate and poll-list, together with the ballots cast at such election, to be separately sealed up and transmitted to the clerk of the town.    The supervisor, together with the assessor and collector, shall, within five days thereafter, meet and canvass said returns, and declare the result of said election."

The 8th section of the same article provides, that "the general laws of the State, in regard to elections and qualifications of voters, shall apply to all elections held under this act, so far as the same may be applicable, except as herein otherwise provided."    Cothran's ed. Rev. Stat. 1500.

Sections 57 and 58 of chapter 46 of the Revised Statutes, prescribe the manner of canvassing the votes under the general Election law.    The 61st section then provides, that "when the votes shall have been examined and counted, the clerks shall set down in their poll-books the name of every person voted for, written at full length, the office for which such person received such votes, and the number he did receive, the number being expressed in words, at full length; such entry to be made, as nearly as circumstances will admit, in the following form, to-wit:"    (Then follows the form of a certificate to be used in authenticating the returns of elections, which shows upon its face that it is to be signed by the judges and attested in the names of the clerks of the election.)

The foregoing are believed to be all the statutory provisions that have any special bearing on the questions pre-

sented for our determination, and upon a careful considera-
tion of them, we are of opinion there is little, if any, room
to doubt that it was the intention of the legislature that the
returns of town elections, like those in controversy, should be
authenticated by the judges and clerks of the election, sub-
stantially in the manner indicated by the form given in the
61st section of the general Election law, above cited.

The 7th section of article 7 of the Township Organization
act, above cited, expressly requires, as we have just seen, the
judges of such an election to " make a written statement or
certificate of the number of votes cast," etc. But it is in-
sisted that the written statement contemplated by this pro-
vision does not mean a certificate, but something essentially
different; that while a certificate would necessarily require
the signatures of those certifying, the statement here re-
quired would not; that a mere indorsement of the results
of the election on the poll-book, without any authentication
of such indorsement, would sufficiently answer the require-
ment of a " written statement," within the meaning of the
statute. We do not concur in this view. On the contrary,
we are of opinion that the expressions " written statement "
and " certificate," are used by the legislature as equiv-
alent terms. The disjunctive " or," is often used in statutes,
as was the case here, in the sense of to-wit, or, that is to say.
Here the judges are required to " make a written state-
ment,"—that is to say, a "certificate of the number," etc.
The expression " or certificate," was clearly used in an
explanatory sense. It was added to express more definitely
what was intended by the term " written statement," namely, a
certificate. That this is the true construction can hardly
admit of a doubt, from what follows further on in the same
section, where it is provided the judges " shall, within forty-
eight" hours after closing the polls and making out the
returns, " cause such *certificate* and the poll-list, together with
the ballots cast, to be separately sealed up and transmitted to
the clerk of the town." Here, it is seen, the expression

"written statement," is dropped altogether, and if by it the legislature did not mean the same thing as the certificate, there is no provision requiring it to be sent to the clerk with the ballots and poll-books, and this will hardly be contended for by any one.

By the express provisions of the Township Organization act, the general Election law is made to govern township elections, so far as the same is applicable, and no reason is perceived, nor has any been suggested, why the returns of elections under township organization, like those under consideration, should not be authenticated by a formal certificate of the judges of the elections, as required by the general Election law, even if the Township Organization act contained no such requirement as is contended by the relator. But we have already seen the two acts are substantially the same in this respect.

But, outside of these plain requirements of the statute, the canvassing board, from the very nature of the transaction, must, in every case, determine for itself whether the papers transmitted to it are, within the meaning of the law, returns of an election. The canvassers must be satisfied that they are genuine, and that they purport on their face to give the result of the election, before they would be warranted in recognizing them as returns, otherwise the right of elections and the purity of the ballot would be constantly exposed to the grossest frauds. And since persons equally honest might, in the absence of express statutory provisions on the subject, widely differ as to what would be a sufficient statement of the result of an election, and also as to what would be a sufficient authentication of such a statement, the legislature has, with a view of obviating all embarrassment and doubt upon this subject, expressly declared what facts shall appear on the face of the returns, and the manner and form in which they must be authenticated, and this declaration of the legislative will we regard as mandatory.

To permit any substantial departure from these plain provisions of the statute, would be in effect to abrogate them altogether, and leave the judges of elections, in making out and certifying returns, to act as fancy or inclination might lead them in each particular case, which would eventually lead to great abuses in our election system.

We have no hesitancy, therefore, in holding that the returns from the excluded precincts, as originally transmitted to the clerk of the town, were not sufficiently authenticated to warrant the respondents in recognizing them as returns of the election in those precincts. The certificates showing the result of the election were not signed by the judges of the election, nor tested in the names of the clerks, as required by the statute. The statements indorsed on the poll-books, with respect to the result, were not vouched for by any one, and the canvassers had no more right to act upon them without amendment than if they had been blank pieces of paper.

This brings us to the question, should the respondents have permitted them to be amended at the time and in the manner proposed? Inasmuch as these incomplete returns were, in contemplation of law, no returns at all, it follows that at the time of this application the judges and clerks of the election in those precincts had made no returns to the town clerk, as required by the statute. The application, therefore, to authenticate the incomplete returns then in the hands of the canvassers, may be regarded as an offer to make the proper returns at that time. It is manifest that the ineffectual effort by the proper officers to make out and transmit, in the usual way, properly authenticated returns from the excluded precincts, was purely the result of inadvertence or oversight, and under such circumstances it is not perceived why the amendments should not have been allowed, as it would have been, in effect, allowing the required returns to be made at that time. The unsuccessful attempt to make them out, certainly did not relieve the judges and clerks from the duty of

afterwards making them out, when it was discovered the effort to do so had proved abortive.   And if, upon their appearing before respondents as a board of canvassers, while the result of the canvass was undetermined, the judges and clerks were still resting under an existing obligation, as we have seen they were, to make out, for the use of the canvassers, properly authenticated returns, upon what principle can it be claimed that the respondents were justified in refusing to allow the incomplete returns perfected in the manner proposed? It was but the work of a few minutes, and everything necessary to the performance of the duty was present, and the ends of justice would manifestly have been thereby promoted. The amendments should have been allowed.

While the legal safeguards which are thrown around the ballot must be faithfully observed by those who have been entrusted with their enforcement, yet, under the pretence of enforcing them, the will of the people, as expressed at the polls, is not to be defeated by mere technicalities.   The most liberal intendments, consistent with the security of the elective franchise, will be indulged, in order to sustain the fairly expressed will of the people through the ballot-box.   The perpetuity of our free institutions depends upon the purity of our elections, and the courts of this country, therefore, will not countenance any subterfuges or evasions of the Election law, founded upon mere technicalities, which will result in returning one to an office to which another was rightfully elected.   And where, in the administration of the Election law, an innocent mistake happens to be made, as occurred in the present case, and it can be remedied without an infraction of any of the safeguards which the law has thrown around the ballot, it ought to be done.

It is claimed in this case, however, that inasmuch as respondents have already announced the result of the canvass made by them, and dispersed, they have, as a board of canvassers, become *functus officio*, and are, therefore, not amenable to the present proceeding.   While the principle here

indicated is conceded, as a general proposition, yet by the later and better reasoned cases it is held not to apply where the canvassing board, as in the present case, dispersed before having completed the canvass. *State* v. *Gibbs*, 7 Am. Rep. 233 ; *People* v. *Hilliard*, 29 Ill. 413 ; *State* v. *County Judge*, 7 Iowa, 186 ; *Clark* v. *McKenzie*, 7 Bush, (Ky.) 523.

Inasmuch as the judges and clerks of the election in the excluded precincts offered to properly authenticate the returns in question, and it is admitted upon the record that the relator was elected by a majority of 325 votes, we do not deem it necessary, under the circumstances, to require them to assemble again before the canvassers for the purpose of signing the returns in question. The previous offer to sign them will, for the purposes of this decision, be treated as an actual authentication of them.

A peremptory *mandamus* will be awarded, as prayed for in the petition, commanding the respondents to complete the canvass of the returns of said town election, including those from the excluded precincts, and declare the result accordingly, and to execute and deliver to the relator a certificate, in proper form, of his election to the office of collector of said town.

*Mandamus awarded.*