## STATE *ex rel.* MONTGOMERY v. STATE ELECTION BOARD *et al.*

No. 2211.    Opinion Filed May 9, 1911.

(116 Pac. 168.)

1.  **MANDAMUS—Canvassing Boards—Judicial Duties.** As a general rule, in the performance of their duties, canvassing boards are merely ministerial officers, but it is always their duty to determine whether the papers received by them, and purporting to be returns, are in fact genuine and sufficient for the purpose of their action, and the exercise of such judgment is recognized as quasi judicial and the result thereof will not be controlled by mandamus.

2.  **ELECTIONS—Canvassing Boards—Duplicate Certificate—Sufficiency.** Where the blank certificate printed and bound in each precinct book of ballots declaring the result of the election in any precinct provided for by section 8, art. 2, c. 31, Session Laws of Oklahoma, 1907-08 (section 3138, Comp. Laws of Oklahoma 1909), was not filled out as required therein, but another certificate,

denominated a duplicate, executed with the same formality as was required to be exercised in the preparation of the certificate mentioned, was returned and received by the canvassing board and canvassed as an original, and no fraud is alleged, the same will, in an action of mandamus, be considered and held to be the official returns and sufficient to support the canvass and the certificate issued thereon.

(Syllabus by the Court.)

*Error from District Court, Osage County; John J. Shea, Judge.*

Action by the State, on relation of Henry H. Montgomery, against the State Election Board and others. Judgment for defendants, and relator brings error. Affirmed.

*J. P. O'Meara* and *King & Shinn,* for plaintiff in error.

*R. B. Boone, H. B. Martin,* and *C. J. Wrightsman,* for defendants in error.

DUNN, J. This case presents error from the district court of Osage county, Okla. The plaintiff in error was a candidate at the general election held on the 8th day of November, 1910, for judge of the district court of the Twenty-Fourth district court judicial district of the state of Oklahoma, composed of the counties of Osage and Washington. His sole opponent for the said office was R. H. Hudson. The defendants in error are the members of the state election board, the county election board of Osage county, and the precinct election board of precinct No. 4, in Caney township, Osage county, Oklahoma. On the canvass of the returns, a certificate of election was issued to R. H. Hudson. This action was brought by relator to secure a writ of mandamus directed to the members of the county election board of Osage county, commanding them to reassemble and to cause to be delivered and returned to precinct No. 4, Caney township of said county, and to the official counters of said precinct, the book of ballots, and two tally sheets received by said election board from the said precinct, for the purpose of having the counters fill out the certificate printed in the back of the book of ballots and to make out at least three duplicates of such certificates, and to enable said counters to show in each certificate the total of

each candidate's vote, and also to command the officials constituting the precinct election board to reconvene for the purpose of receiving said book of ballots and two tally sheets, and to enable them to prepare and fill out the official certificate printed in the back of said book of ballots, and to make out at least three duplicates of such certificate, making said certificates conform to the requirements of the statute. Following the request for this relief is a request for an order commanding the county election board to reconvene for the purpose of receiving said official returns from said precinct board after the same should have been made in accordance with the requirements of the writ, and that the court should by its order command the state election board and the members thereof to remain in session or reconvene for the purpose of receiving the official returns from said county election board, and to declare the result of the same when so received, as required by law.

It is averred on the part of relator that the county election board had made a. true and correct statement of the returns received from the several precincts of Osage county, except precinct No. 4, Caney township, in said county, from which said last-named precinct no return had been made. The statutes containing those provisions of law controlling the questions presented are found in the Session Laws of Oklahoma 1907-08, and are as follows:

Section 9, art. 4, c. 31, provides:

"There shall be printed and bound in each precinct book of ballots and immediately following the ballots, a certificate upon which is printed a correct list of all the offices to which candidates are aspiring, as shown by the ballots contained in that book, with the names of the various candidates therefor, grouped under the name of the office. In a separate column, and just opposite each name, shall be the name of the political party nominating such candidate. Following this shall be a column of sufficient width to write, in words, the total number of votes said candidate received at that precinct. Just preceding this tabulation of names, as just provided for, shall be printed the following, viz: 'We the undersigned official counters for the election held at Precinct Number—— of —— township, of ——county, on November ——, 19—, hereby certify that the correct number of votes

received at said precinct by the various candidates voted for is set forth below in written words. The votes for each candidate being recorded in a column set opposite his name, as follows:' (Here shall follow the tabulation of the various groups of candidates' names, with the name of their respective office preceding the several groups.) After the tabulation of candidates' names shall be printed proper statements showing the number of ballots spoiled, recording the consecutive number thereof, also a statement that the official counters have counted the unused ballots, certifying to the number of same, also showing the consecutive number of the first one and the last one, and stating that they are included in the number. After this shall follow the signature of the official counters, who shall swear to the correctness of such certificate, and such oath may be attested by either of the members of the precinct election board. Proper blanks shall be printed for such attestation."

Section 4, art. 2, c. 31, provides:

"Two of the official counters, of different political parties, shall call from the ballots the names of the candidaties voted for, while the other two shall record the votes upon the tally sheet provided for that purpose, each one recording upon a different sheet at the same time. * * * The record of the vote shall be kept by the familiar method of a tally on every fifth vote."

Section 8, art. 2, c. 31, provides:

"When the callers announce a vote, the enumerators shall call the numbers aloud, keeping check on each other, and when the count is completed the two tally sheets shall be signed by the four counters. The four counters shall then fill out the certificate in the back of the book of ballots, without detaching it from said book, and they shall also make out at least three duplicates of such certificate. Each certificate shall have only the total of each candidate's vote and that shall be written with pen and ink, in words and figures. Each certificate shall be signed by each of the four counters, and sworn to before any one of the precinct board. One of such certificates shall be kept by the inspector, and the other two shall accompany the stub book of ballots."

Section 12, art. 2, c. 31, provides:

"The stub ballot book, with all the unused ballots left attached to their stubs, with the original certificate of the result in the back thereof, together with the two duplicate copies of such certificate, shall be placed in the envelope labeled 'Tally Sheet and Book of Ballots.' The several envelopes shall then be sealed by moistening the gummed flaps and pressing them down firmly,

then a seal of sealing wax shall be placed upon such gummed flaps," etc.

Section 12, art. 4, c. 31, provides:

"It is hereby made the duty of the county election board to convene at the county courthouse by or before five o'clock p. m. upon the day of each election, for the purpose of receiving the official returns, and they shall remain in session until eleven o'clock on said evening, and shall reconvene upon the next succeeding day at eight o'clock a. m., and so remain in session until said returns are all delivered. They shall list the results of such election as they are delivered, upon the books prepared for that purpose by the state board, and when the results in both state and county contests have all been recorded from the counters' certificates, said board shall issue certificates of election to all county candidates, and shall certify the result in each state contest to the state board, and such certificates, when properly certified to, shall be *prima facie* evidence of the correctness of the result in the several counties."

From the pleadings and proof it developed that the certificate provided for in section 9, art. 4, c. 31, *supra,* bound in the book of ballots, was not filled out, signed, and sworn to, as provided in that section, by the counters of the contested precinct. But it appeared that the counters prepared at least two of the three other certificates provided for in section 8, art. 2, c. 31, *supra.* Those certificates accompanied the returns and were before the county election board. It also appears from the pleadings that 23 votes were polled at this precinct. One of the certificates which was returned showed that Mr. Hudson received 14, and the relator received 14 votes. This certificate was rejected by the county election board, and the returns as shown by the other accepted, which showed that Mr. Hudson had received 14 votes and relator 9 votes. It is the contention of relator that the returns from this precinct were invalid and void by reason of the lack of the completed certificate in the back of the book of ballots, and while a number of other questions are presented and discussed, as it is conceded that if the returns, made as they were, were valid and sufficient upon which to predicate the certificate of election issued, the judgment of the trial court denying the writ should be affirmed, we will confine our discussion to this

36          SUPREME COURT OF OKLAHOMA.

State ex rel. Montgomery v. State Election Board et al.

question.   To determine it there is involved little if anything more than a construction and application to the facts of the different sections of the statute above set out.

Our election laws seem to be silent upon the question of what shall constitute the official returns from the precinct election board.   It is to be noted, however, that under the requirements of section 12, art. 2, c. 31, it is made the duty of the official counters to take the stub ballot book with all of the unused ballots left attached to their stubs with the original certificate of the result in the back thereof, together with the two duplicate copies of such certificate, and place these. together in an envelope which must be sealed and returned.   It is also to be noted that under section 12, of article 3, the county election board shall convene and list the result of the election in both state and county contests from the counters' certificates.

Canvassing boards are usually held to be without discretion and to be ministerial officers only, without power to do other than follow the plain statutory requirements in reference to their duties.   *Stearns, Mayor, et al. v. State ex rel.*, 23 Okla. 462, 100 Pac. 909.   But clearly, before they can perform their duties and canvass returns presented to them, they must first determine in their own minds from the evidence whether the papers returned and received by them purporting to be the election returns are in fact such returns, and are genuine and intelligible, and substantially authenticated as required by law, and it is held that in the performance of these duties they take on a quasi judicial character.   High on Extraordinary Remedies (2d Ed.) § 56; McCrary on Elections (4th Ed.) § 411, and authorities cited.   Hence, in the case at bar, it was first necessary for the board to determine whether the returns then before them from the contested precinct were in fact what they purported to be, and if genuine, to determine which of the conflicting certificates returned, if either, should be considered, and as we view the question, if either of these certificates was official and valid, then the action of the board thereon was final, and not subject to be revised in mandamus.

The board recognized as official and valid and canvassed the returns as disclosed by the certificate which gave to the relator nine votes and to his adversary fourteen votes. The certificate which was thus canvassed was one the statute denominates a duplicate, and which counsel contend the board was unauthorized to look to in making its canvass.

The purpose of elections is to secure an expression of the popular will, but such expression without a definite, certain method of preserving the same and making it effective, would be a nullity. The rules laid down in the statute are for the purpose of providing and affording means of securing this expression and of preserving and effectuating the will of the electors as expressed. This court said in the case of *Grove v. Haskell,* 24 Okla. 707, 104 Pac. 56:

"Elections are not held in order to give opportunities to post notices and to conform to other technical details and requirements of law, but notices and other legal requirements are provided in order that elections may be lawfully and fairly held, and that people entitled to participate therein may have notice thereof. The end to be accomplished in every case, not the means, is the chief purpose of the law."

In order, then, that the result of an election may be with certainty preserved and made available, section 8 of article 2, *supra,* was passed, which provides that on the completion of the count the tally sheets on which the tally is kept should be signed by all four counters; that a certificate permanently bound in the back of the book of ballots should be filled out by the four counters, that the same should not be detached from the said book, and that the counters should also make out at least three duplicates of such certificate. Each of the four certificates thus provided for was to be prepared with pen and ink, and the result written not only in words, but also in figures, and each certificate when completed was required to be signed and sworn to by all of the four counters. Then follow specific directions as to what should be done with each of these certificates. One of them was to be delivered to and kept by the chief election official of the precinct, the inspector, and the other two to accompany the stub

book of ballots. There is much detail, but not much law involved in a consideration of and action under these simple provisions. But there is a reason for each of the requirements contained in the statute. One of the duplicate certificates was left with the inspector to the end that the misfortune, catastrophe, or fraud which would destroy one might not destroy and thereby leave a lack of evidence of the result of the election in that precinct. Likewise, as counsel suggest, it was doubtless also to make the result more certain, and forgery or alteration more difficult. It is to be noted, however, that the certificate in the back of the stub book was required to be executed with no more formality than was required in the execution of each of the others. They were all required to be executed with the same care and detail, even to the minutest particulars. No scrivener or copyist could legally make one of them. They were all required to be made by the counters, each was to be signed by the counters, and they are called, and are in fact, duplicates. We suppose that no copy could be made of anything except there was first an original, but when we view the purpose of this statute it seems to us that there is but one conclusion to which we can come, which is that each of these was an original, so far as the purpose for which it was provided was concerned. Can any one doubt that if the returns within the envelope provided for should have been destroyed prior to their being canvassed the county election board could call on the precinct inspector and canvass as official the duplicate certificate left with him? And if so, could it not do this even if the certificate in the back of the stub book had never been completed? Or if the stub book should be destroyed can any one question, when the purpose of the act is considered, that the board could have received either of the other certificates and canvassed it? Is not the purpose for which these duplicate certificates are provided clearly that they may be used in the event the so-called original is lacking? And if so, of what consequence is it whether it be lacking because it was not made or because of the fact of having been made it was destroyed or lost? In either event does not the occasion contemplated by the statute arise for

a canvass of one of the duplicates provided for? It is not claimed that these so-called duplicate certificates are merely copies, because they are not made as copies are made; they are made as originals are made, and being so made, should they not be held to supply in full the purposes for which they were intended, and construed as originals? We think so.

Section 1483 of Carroll's Statutes of Kentucky, 1903, provides for a return to be made on the certificate on the inside cover of the stub book of ballots precisely as in the statute before us. It also provides that duplicates thereof may be made "which may be used as proof in case of loss or destruction of the original." In an election contest case, *Anderson v. Likens,* 20 Ky. Law Rep. 1001, 47 S. W. 867, it appeared that the certificate of the officers required to be made on the stub book was not signed by all the officers of the election and the lower court rejected the returns because of this. The Court of Appeals, however, stated the grounds and said:

"It is made a ground of contest that at East Fordsville precinct, where Anderson received a majority of 55, the certificate of the officers required by statute to be made on the stub book was not signed by all the officers of the election. Upon that ground the vote of that precinct was by the lower court thrown out. But as there were duplicate certificates duly and fully made out and signed by all the officers of the election, and which were competent evidence of correct returns of that precinct, the defect of the original crtificate did not render the election held at East Fordsville void."

It is to be noted that the court in that case held, as we do in this, that the so-called duplicate certificates might be counted notwithstanding the fact of the imperfect execution of the so-called original. It was not lost or destroyed; it was simply not made. No statute fixes the certificate in the back of the stub book of ballots as the only one, or as the one which shall be canvassed, while section 12, art. 4, c. 31, provides that "when the results in both state and county contests have all been recorded from the counters' certificates, said board shall issue certificates of election," etc. This is the only reference to the returns from

which the canvass is to be made, and is in harmony with the conclusion here reached.

Finding as we do that the certificate canvassed by the county election board in this case, while denominated a duplicate, was in fact an original certificate within the purposes of the law, executed with all of the formalities, and carrying with it all the force that any original was required to or could have, it therefore follows that the judgment of the trial court denying the writ is affirmed.

All the Justices concur.