## MOREN v. NICHOLS et al., County Election Board.

No. 4616.    Opinion Filed January 7, 1913.

(129 Pac. 741.)

1.     ELECTIONS—Canvassing Boards—Correction of Errors. Where the only defect in the returns from an election precinct to the county canvassing board is that the certificates showing the number of votes cast for the various persons voted for were not authenticated by the signatures of two of the four counters at the election in said precinct, as required by section 7, c. 106, Sess. Laws 1911, and where, before the county canvassing board had completed the canvass of the returns, all the election officers of said precinct appeared before the county board and offered to correct the errors in said returns by authenticating the same with the signatures of said two counters who had omitted to sign same, it was the duty of the board of county canvassers to permit such correction and to canvass the returns from said precinct; and, upon failure or refusal to do so, the board of county canvassers may be compelled to permit such correction, or treat the returns as if corrected, and canvass same.

2.     SAME—County Election Board—Opening Returns. By reason of section 8, c. 106, Sess. Laws 1911, the county election board as the county board of canvassers is under no duty, and is without authority, to open the envelope returned by the election officers of any precinct containing the voted ballots and tally sheets, labeled as by the statute required, to wit, "Voted Ballots," "Tally Sheets," and "Stub Book of Ballots," in order to search for the certificate of returns which should have been inclosed in a separate envelope, labeled "Returns," in order that the returns from said precinct may be canvassed.

(Syllabus by the Court.)

*Error from District Court, Cherokee County;*
*John H. Pitchford, Judge.*

Mandamus by Joe Moren against Virgil Nichols and others, constituting the Election Board of Cherokee County. Decree for defendants, and petitioner brings error. Reversed and remanded.

*Bruce L. Keenan* and *M. C. Reville,* for plaintiff in error.

*Houston B. Tehee* and *E. C. McMichael,* for defendants in error.

HAYES, J. The facts in this case appear from the pleadings and by stipulation upon which the case was tried in the lower court. Plaintiff in error, who brought this proceeding in the court below for mandamus, and one J. F. Musgrave, were rival candidates at the general election held on the 5th day of November, 1912, for the office of county commissioner of the First commissioner's district of Cherokee county. By a canvass of part of the returns from the different election precincts of the commissioner's district the county election board ascertained that Musgrave had received 307 votes, and plaintiff in error 302 votes. The county election board, however, refused to canvass the returns from Hulbert precinct No. 1, because the certificate to said purported returns had been signed by only two of the counters of said precinct. They also refused to canvass and count the votes as returned from Hulbert precinct No. 2 and Moody precincts Nos. 1 and 2, for the reason that said returns were sealed up in the envelope labeled "Voted Ballots," "Tally Sheets," and "Stub Book of Ballots." If the votes from the several precincts, the returns from which were not canvassed by the county election board, are canvassed and counted, the result of the election will be changed. This action was commenced by plaintiff in error to secure mandamus to compel the county election board to recanvass the votes from the various election precincts of the district, including those precincts not heretofore canvassed by the board, and to issue certificate to the successful candidate in accordance with the result of the election ascertained thereby. At the time the action was instituted in the court below, the county election board was then in session, engaged in canvassing the returns of the votes for county and state officers from the various precincts of the county. During the time the vote from the different precincts of the commissioner's district here involved was being canvassed, the election officials of Hulbert precinct No. 1 appeared before the county election board, and asked permission to correct the irregularly executed certificate to the returns made by the precinct election officers by attaching thereto the signature of the other two counters, and by swearing to same before the precinct election in-

spector. This the county election board refused to permit the precinct election officers to do, and in their canvass rejected the returns from this precinct.

By section 7, c. 106, Sess. Laws 1911, it is provided that, when the count at any election precinct is completed, the two tally sheets shall be signed by the four counters, and the four counters shall then fill out the certificate in the back of the book . of the ballots without detaching it from said book, and also shall make out at least four duplicates thereof. Such certificate shall have only the total of each candidate's votes, and shall be signed by each of the four counters, and be sworn to before the inspector of elections. One such certificate is required to be kept by the inspector of the election and the other two constitute the returns, and, "when properly certified to, shall be *prima facie* evidence of the correctness of the precinct vote." By section 8 of the same act the two duplicate copies of the certificate are required to be placed into an envelope labeled "Returns," and returned to the county election board, which the county election board shall open and canvass.

It was the duty of the canvassing board to examine the returns and ascertain whether the certificate had been executed by the officers as provided by law, and whether the purported returns were in fact genuine and sufficient for the 'purpose of their action. *State ex rel. Montgomery et al. v. State Election Board,* 29 Okla. 31, 116 Pac. 168. When they found that such certificate had not been executed by the counters as required by law, they violated no duty in refusing to canvass the returns in that condition; and, had they completed their canvass of all the other returns from the district, ascertained the result thereof, issued the certificate of election and adjourned, without the occurrence of the other events we shall subsequently advert to, they would have fully discharged their duty, and a writ of mandamus would not lie to compel them to reassemble and to canvass a new set of returns, or returns whose irregularities had been corrected. *Roberts et al. v. Marshall et al.,* 33 Okla. 716, 127 Pac. 703. But, before they completed the canvass, the precinct officers offered to correct the irregularities in the certificates which re

sulted from the negligent omission of two of the counters to sign same, and not from any fraud or misconduct on the part of any one. The regularity of the returns otherwise is not questioned; nor was it proposed in any manner to change same, other than to perform by the two counters the omitted act required by law, so the returns might be canvassed. Had the counters arbitrarily or negligently refused to sign the certificates before the returns were made to the county canvassing board, and an action for that purpose had been brought, they could have been compelled to do so by mandamus. They cannot by a negligent or willful failure to perform a plain ministerial duty block the operation of the law. If the precinct officers could have been compelled to perform the omitted duty, they should not, in the absence of fraud, be refused permission to perform it voluntarily; and a narrow and technical rule that would defeat the performance of an omitted duty by these officers that can affect unjustly no one should not be adopted, but one that will effectuate the will of the people as expressed at the election and the fulfillment of the purposes of the statute without needless litigation. We are of the opinion that it was the duty of the county election board to permit the precinct counters to correct the certificate by signing same; and that it is competent for the court to order them by mandamus to do so, although they have canvassed all the other returns and issued a certificate to the prevailing candidate as disclosed by the returns canvassed. The board, not having fully and completely discharged the duty under the statute at the time the purported canvass was made, may be compelled to reconvene and recanvass and correct the mistake it has made. *Stearns et al. v. State ex rel. Biggers et al.*, 23 Okla. 462, 100 Pac. 909. In the view that the precinct officers should have been permitted to correct these returns we are supported by the following authorities in point: *Rummel v. Dealy et al.*, 112 Iowa, 503, 84 N. W. 526; *People ex rel. v. Nordheim et al.*, 99 Ill. 553; *Bates v. Crumbaugh*, 114 Ky. 447, 71 S. W. 75, 24 Ky. Law Rep. 1205.

In *People ex rel. v. Nordheim et al., supra*, upon a very similar state of facts, the court said:

"That the offer by the officers to sign the returns after it was discovered that they had omitted to sign them, and after the returns had been sent to the proper authorities, was sufficient to treat the returns as if they were in fact signed, and they should have been so treated."

It follows from this conclusion that the county election board should be ordered in this proceeding to reconvene, if they have adjourned, permit the election officers of the precinct to correct the certificate to the returns from said precinct, or to treat said returns as if corrected, and to consider them in their canvass of the returns from said commissioner's district.

The statute requires that as the ballots are counted by the election officers they shall be strung upon a string, and when the canvass is completed, the string shall be tied and the knot sealed. Section 8 of the act of 1911, above referred to, provides that, when the ballots are thus tied and the knot sealed, they and the stub ballot books with all the untouched ballots attached to the stubs and the original certificate in the back thereof, and the two tally sheets, shall be placed in an envelope, labeled "Voted Ballots," "Tally Sheets," and "Stub Books of Ballots," and provides that "this envelope shall not be opened except upon order of the Supreme Court or district court or a judge thereof, in case of contest or some legal proceeding, necessitating the opening of the same." This envelope, together with the envelope labeled "Returns," which should contain the two duplicate copies of the certificate, after having been sealed, are required to be placed by the precinct election officers into the ballot box and the box to be securely locked, which shall not again be opened, but shall be delivered in that condition to the secretary of the county election board. "The county election board shall not disturb anything in the ballot box except the envelope, marked 'Returns,' which, when canvassed, shall be returned to the ballot box and the ballot box will again be securely locked. * * *"

From the other precincts involved there appears to have been returned by the election officers no envelope indorsed "Returns," containing the two duplicate certificates required by the statute. The only envelope returned was the one indorsed as heretofore mentioned; and the certificates from which the can-

vass of returns of these precincts are to be made by the county election board, if executed and returned by the precinct boards, are in said envelope with the ballots and tally sheets, which plaintiff desires the court to compel by mandamus the county election board to open. But it is clear from the foregoing quoted portion of the act that the county election board is without authority to open this envelope. It was the purpose of the statute to preserve intact the ballots, the tally sheets, the unvoted ballots, and the stub books of the ballots, untouched by any other hands than those of the precinct election officers, in order that they may be used in case of contest or in any other legal proceeding wherein they may become important as evidence. It was evidently contemplated by the Legislature that any procedure that permitted these ballots and tally sheets to be handled after they left the hands of the precinct election officers would render the perpetration of fraud in the alteration and change thereof easy, and the responsibility therefor difficult to locate, and would reduce greatly their value as evidence in any proceeding, civil or criminal, in which they might be needed. The delinquency as to these precincts lies not in the county election board, but in the respective precinct election boards in failing to make up properly the returns and inclose the necessary certificates in the envelope indorsed "Returns" as provided by statute. Whether in a proceeding for that purpose the returns as made to the county election board might not be required to be returned to the precinct election boards and said precinct election boards compelled yet to make the returns as the statute requires, or whether if the precinct election boards, before the canvass of the returns, had appeared before the county election board and requested permission to have returned to them the election boxes so they could make up the returns as required by the statute, it would not be the duty of the county election board to permit them to do so, are questions this proceeding does not present. It is clear to our minds that the statute does not make it the duty nor authorize the county election board to open the envelope containing the voted ballots and tally sheets for the purpose of searching for that portion of the returns upon which the statute requires the canvass to

be made, and in unmistakable language prohibits them from do-ing so. The writ of mandamus will not compel them to do under order of the court that which they could not do without such writ. The function of the writ is not to create duties that did not theretofore exist, but to compel the performance of duties theretofore imposed by the law.

It is urged by defendants in error that, although it be their duty to canvass any of the returns which they have refused to canvass, plaintiff in error has a plain, speedy, and adequate reme-dy at law, and his action for mandamus will not lie. This con-tention is not sound. This is not an action to obtain possession of an office or try the title thereto. If such were the relief sought, the proper remedy would be a contest or *quo warranto* proceeding; but the relief plaintiff in error seeks is to have the county canvassing board make a full and complete canvass of the legal returns before it and declare the result of the election from a canvass of all the returns before the board, instead of a canvass of a part of them, and to issue a certificate of election ac-cordingly. To secure the performance of a ministerial duty, en-joined by law upon an officer, the only adequate remedy ordinarily is that of mandamus  *Rummel v. Dealy, supra.* We know of no remedy by which plaintiff could secure the performance of its duty by the board other than the one he has pursued.

The judgment of the trial court is accordingly reversed and the cause remanded, with instructions that the writ issue as to Hulbert precinct No. 1.

TURNER, C. J., and WILLIAMS and KANE, JJ., con-cur; DUNN, J., absent, and not participating.